```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 12-1065(DSD/JSM)
```

Linda Volk, as guardian of
Andrew John Johnson,

       Plaintiff,

v.                                                  **ORDER**

ACE American Insurance Company,

       Defendant.


      Richard W. Curott, Esq. and Curott & Associates, LLC,
      P.O. Box 206, Milaca, MN 56353, counsel for plaintiff.

      Steven J. Sheridan, Esq. and Fisher, Bren & Sheridan,
      LLP, 920 Second Avenue South, Suite 975, Minneapolis, MN
      55415, counsel for defendant.


This matter is before the court upon cross-motions for summary judgment. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion for summary judgment by defendant ACE American Insurance Company (ACE).


**BACKGROUND**

This insurance-coverage dispute arises out of a 2005 injury to Andrew John Johnson, son of plaintiff Linda Volk. Johnson is mentally-handicapped and requires the services of a personal care

attendant (PCA).  Volk Aff. ¶ 2.[1]  At the time of his injury, nonparty North Country Home Care, Inc. (North Country) provided PCA services for Johnson.  Id.  On November 20, 2005, under the supervision of his North Country PCA, Johnson was permanently blinded in a BB gun accident.  Id. ¶¶ 5, 7.

At the time of the injury, ACE provided North Country with coverage for both general liability and professional liability. Answer ¶ 3.  The insurance policy (Policy) was in effect from July 6, 2005, until June 26, 2006, when North Country sold its assets and ceased business operations.  Gill Aff. Ex. 1, at 0059.  In January 2009, the Minnesota Secretary of State officially dissolved North Country.  Kirk Aff. Ex. 2, at 4, ECF No. 32.

In June 2009, Volk notified Donita Wark, former president of North Country, that Volk intended to file a claim for Johnson's injury.  See McGuire Aff. Ex. 1, at 0208.  Wark reported the claim to ACE, seeking coverage under the Policy.  Id.  ACE denied coverage in August 2009, determining that the incident fell under the Policy's professional liability coverage, which only covered claims made prior to the Policy's termination.  Id. Ex. 3, at 0238. ACE informed Wark that general liability coverage did not apply because the incident fell within that portion's exclusions, including an exclusion (Patient Exclusion) for "[a]ny loss, cost or

---

[1] Linda Volk's affidavit is attached as Exhibit A to the affidavit of Richard W. Curott.  See Curott Aff. Ex. A., ECF No. 17.

expense arising out of 'bodily injury' to your patients." Gill Aff. Ex. 1, at 0021; see McGuire Aff. Ex. 3, at 0237.

Following ACE's denial of coverage, Volk sued North Country in Minnesota court. North Country forwarded a copy of the complaint to ACE. McGuire Aff. Ex. 5, at 0252. Thereafter, on November 22, 2011, Volk and North Country agreed to a Miller-Shugart settlement.[2] Kirk Aff. Ex. 4, ECF No. 32. On February 21, 2012, Volk obtained a judgment against North Country for $2,675,758.27. Id. Ex. 3. On April 11, 2012, Volk filed this suit in Minnesota court, seeking a declaration that ACE owed coverage under the Policy. ACE timely removed, and both parties move for summary judgment.

**DISCUSSION**

**I.  Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[2] "In a Miller-Shugart settlement, an insured ... who has been denied coverage for a claim agrees with the claimant ... on a judgment for an amount collectible from the insurance policy. The claimant releases the insured from personal liability and the claimant's recovery is limited to the amount obtained from the insurers." Corn Plus Coop. v. Cont'l Cas. Co., 516 F.3d 674, 677 n.2 (8th Cir. 2008) (citing Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982)).

3

A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a party cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Insurance Coverage**

In Minnesota the interpretation of an insurance policy is a question of law. Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous

language its plain and ordinary meaning, and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (citation and internal quotation marks omitted).

A plaintiff seeking to enforce a Miller-Shugart settlement has the burden of proving the judgment is covered by the Policy. Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 529 (8th Cir. 1996) (applying Minnesota law). To do so, the insured must first establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies. Id. at 313. The court strictly construes exclusions against the insurer, in light of the insureds' expectations. Thommes, 641 N.W.2d at 880. If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion. SCSC Corp., 536 N.W.2d at 314.

**A.   Patient Exclusion**

Volk argues that the injury is covered by the Policy's general liability section.[3] ACE responds that the section's Patient Exclusion precludes coverage. Volk claims that Johnson was not a "patient," but instead was a "recipient" or "consumer" of PCA care, and that, as a result, the Patient Exclusion is inapplicable. Specifically, Volk argues that "patient" connotes a professional relationship and PCAs are not licensed professionals.

"Patient" is not defined within the Policy, and Volk argues that the term is ambiguous. "Patient" is not ambiguous, however, unless it is read in isolation from the rest of the Policy. See Gammon v. Auto-Owners Ins. Co., 454 N.W.2d 434, 436 (Minn. Ct. App. 1990) ("Courts must determine the intent of contracting parties not by a process of dissection in which words are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning in accordance with the obvious purpose of the ... contract as a whole." (citations and internal quotation marks omitted) (alteration in original)). The Policy

---

[3] No recovery for professional liability is possible because no claim was timely reported. The professional liability section only covers claims reported "during the Policy Period or during any Extended Reporting Period." Gill Aff. Ex. 1, at 0025. Under Minnesota law, such claims-made policies require that the insurer be given notice of the claim during the coverage period. Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co., 187 F.3d 871, 874 (8th Cir. 1999). Volk and Johnson did not raise their claim until after the effective date of the Policy lapsed. Therefore, the professional liability section provides no coverage.

refers only to "patients," and never mentions "customers" or "recipients."

Moreover, the term "patient" is used elsewhere in the Policy. The professional liability portion covers injuries caused by "any act or omission in the rendering or failure to render 'healthcare professional services,'" which are defined as "services performed by an insured to care for or assist your *patients*." Gill Aff. Ex. 1, at 0005, 0008 (emphasis added). If, as Volk argues, those receiving PCA services are not patients, the professional liability section could never be triggered, and its coverage would be illusory. See Taulelle v. Allstate Ins. Co., 207 N.W.2d 736, 739 (Minn. 1973) ("[I]nsurance contracts should, if possible, be construed so as not to be a delusion to those who have bought them." (citation and internal quotation marks omitted)). Therefore, the recipients of PCA services must be patients, and the Patient Exclusion precludes general liability coverage for Johnson's accident.

Even if the term "patients" is ambiguous, however, extrinsic evidence conclusively resolves the question of whether the incident fell within general liability coverage. See Wessman v. Mass. Mut. Life Ins. Co., 929 F.2d 402, 407 (8th Cir. 1991) ("[I]f the language is ambiguous, resort may be had to extrinsic evidence, and construction then becomes a question of fact, unless such evidence is conclusive." (citations omitted)) (applying Minnesota law).

Approximately seventy-four percent of North Country's premium paid for professional liability coverage, with only eight percent allocated to general liability coverage. Gill Aff. ¶ 7. Ninety-four percent of the professional liability portion covered PCA services. Id. ¶ 8. If, as Volk argues, individuals receiving PCA services were not "patients" under the Policy, these large premiums would be for wholly illusory coverage. See Taulelle, 207 N.W.2d at 739. As a result, the extrinsic evidence conclusively resolves any purported ambiguity. Therefore, for this additional reason, summary judgment for ACE is warranted.[4]

### B. Statutory Insurance Requirements

Volk next argues that, interpretation of the Policy terms notwithstanding, the Policy must provide coverage. Specifically, Volk argues that, under Minnesota law, North Country was required to "maintain a surety bond and liability insurance throughout the duration of enrollment and provide[] proof thereof." Minn. Stat. § 256B.0655 subdiv. 1g(2). In other words, North Country and ACE were not allowed to opt out of statutorily-required coverage. See Am. Family Mut. Ins. Co. v. Ryan, 330 N.W.2d 113, 115 (Minn. 1983) ("[P]arties [to an insurance contract] are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent

---

[4] Because the Patient Exclusion applies, the court need not address the "Other Coverage Parts" exclusion.

of the insurer's liability is governed by the contract entered into." (citation omitted)). North Country, however, maintained coverage under the Policy until it ceased business operations, and was not required to maintain coverage indefinitely. See Gill Aff. Ex. 1, at 0059. Therefore, North Country met its statutory coverage obligations, and Volk's argument is unavailing.

### C. Doctrine of Reasonable Expectations

Finally, Volk argues that the Policy should provide coverage under the doctrine of reasonable expectations, as North Country intended to procure comprehensive coverage.[5] See Atwater Creamery Co. v. W. Nat. Mut. Ins. Co., 366 N.W.2d 271, 277 (Minn. 1985) ("[T]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." (citation omitted)). The doctrine of reasonable expectations, however, is only applicable "as a tool for resolving ambiguity and for correcting extreme situations ... where a party's coverage is significantly different from what the party reasonably believes it has paid for and where the only notice the party has of that

---

[5] Volk relies, in part, on a deposition of Donita Wark taken prior to the commencement of this action. ACE objects to this as inadmissible hearsay, arguing that it did not have a chance to cross-examine Wark. See Fed. R. Civ. P. 32(a)(1). Because the term "patient" is not ambiguous, and because the court declines to invoke the doctrine of reasonable expectations, the court need not address this argument.

difference is in an obscure and unexpected provision." Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 49 (Minn. 2008).

As already explained, the policy language was unambiguous. Moreover, even if there was ambiguity, this is not an extreme situation where North Country was misled into purchasing illusory coverage. Indeed, North Country had comprehensive coverage during its existence, and Johnson's injury, had it been timely reported, would have fallen squarely within North Country's professional liability coverage. Thus, Volk may not invoke the doctrine of reasonable expectations to establish coverage for Johnson's injury. Therefore, summary judgment for ACE is warranted.[6]

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's motion for summary judgment [ECF No. 14] is denied;

2.  Defendant's motion for summary judgment [ECF No. 27] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 5, 2013

                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court

---

[6] Because the injury was not covered by the Policy, the court does not address ACE's argument that Wark's assignment of the claim to Volk was invalid.